Exhibit 1

August 25, 2008

Mr. Bob Sturey
Senior Director, Special Education Services
Wake County Public School System
Crossroads II
110 Corning Road
Cary, NC 27511

Re: Investigation of Abuse Complaints

Dear Mr. Sturey,

  I am writing to introduce you to Disability Rights North Carolina and to the nation's Protection and Advocacy system (P&A). Last year Governor Easley designated Disability Rights North Carolina (then called Carolina Legal Assistance) as North Carolina's Protection and Advocacy system (P&A). P&As are part of a federally mandated system with the authority and obligation under federal law to protect and advocate for the human and legal rights of individuals with mental illness, developmental or other disabilities.[1] Congress created the Protection and Advocacy system in response to Congressional hearings that documented a history of abuse and neglect of people with disabilities. Under federal law, a state may not receive federal funds for services to persons with disabilities unless it has established a Protection and Advocacy system. Disability Rights North Carolina is the P&A system for North Carolina.

  The federal statutes require that P&As have the tools to be effective in order for the state to receive funds. Specifically the Developmental Disabilities Bill of Rights Act requires that P&As have (1) access to individuals with developmental disabilities, (2) access to the records of individuals with developmental disabilities, and (3) the P&A must have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities. 42 U.S.C. 15043 (a)(2)(B); (a)(H); and (a)(I). The term "abuse" includes actions that cause psychological harm as well as death or physical injury. Where a restraint is improperly utilized, it may be considered a form of abuse.[2] Neglect may arise as a result of the failure to provide necessary services. The federal statutes also require the P&A must be independent from agencies providing services and that it must have the authority to pursue legal, administrative,

---

[1] *See* Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.;* Developmental Disabilities Assistance Bill of Rights Act ("DD Act"), 42 U.S.C. § 15001, *et seq.;* and Protection and Advocacy of Individual Rights Program ("PAIR"), 29 U.S.C. § 794e, *et seq.;* and all of the accompanying regulations.
[2] 42 C.F.R. § 51.2; 45 C.F.R. § 1386.19.

and other appropriate remedies to protect and advocate for the rights of people with disabilities in the state.

The federal statutes specifically charge the state P&A with the duty to investigate incidents of abuse and neglect of individuals with disabilities that are reported to the system or if there is probable cause to believe that the incidents occurred. Courts have held that there can be "no dispute" that a P&A is irreparably harmed if it is "prevented from pursuing fully . . . its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring." *Iowa Prot. & Advocacy Sys., Inc. v. Rasmussen,* 206 F.R.D. 630, 2001 WL 1809404, at *5 (S.D. Iowa, March 12, 2001) (quoting *Gerard Treatment Programs, L.L.C.,* 152 F. Supp. 2d at 1173); see also *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski,* 131 F. Supp. 2d 1039, 1051 (E.D. Wis. 2001); *Advocacy Ctr. v. Stalder,* 128 F. Supp. 2d 358 (M.D. La. 1999)." *Office of Prot. & Advocacy for Persons with Disabilities v Armstrong,* 266 F. Supp. 2d 303 (D. Conn. 2003).

Disability Rights North Carolina is required to conduct abuse and neglect investigations in all settings that serve people with disabilities. 42 U.S.C. 15043(a)(2)(H) – (I). Recognizing that schools provide disability services, the school setting is one in which an abuse and neglect investigation may occur. *See*: *Conn. Office of Prot. & Advocacy v. Hartford Bd. of Education,* 355 F. Supp. 2d 649 (D. Conn. 2005), *aff'd,* 464 F. 3d 229 (2nd Cir. 2006) ("To the extent that developmentally disabled students attend HTLA, … the school is undoubtedly a 'location in which services, supports, and other assistance are provided.' 42 U.S.C. § 15043(a)(2)(H) - (I).") Thus, Disability Rights North Carolina's protection and advocacy system responsibility and authority includes responding to complaints of abuse or neglect that occur within schools serving students with disabilities.[3] The federal regulations establish a P&A's right to conduct a full investigation of a report of abuse including the opportunity to interview personnel who might reasonably have knowledge of the incident under investigation:

> **45 CFR 1386.22 (f) Access to Facilities and Individuals with Developmental Disabilities**--A system shall have reasonable unaccompanied access to public and private facilities which provide services, supports, and other assistance for individuals with developmental disabilities in the State when necessary to conduct a full investigation of an incident of abuse or neglect under Section 142(a)(2)(B) of the Act. This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have

---

[3] *See The State of Connecticut Office of Protection and Advocacy for Person with Disabilities v. Hartford Board of Education,* 355 Fd.Supp.2d 649, 659-60 (D.Conn. 2005)(interpreting the PAIMI Act, DD Act of 2000 and PAIR Act, along with the accompanying regulations to extend P&A access authority to a non-residential public school setting); *see also, Michigan P&A Service, Inc., v. Miller,* 849 F.Supp. 1202 (W.D. Mich. 1994)(finding that "facilities" covered by the PAIMI regulations include schools because special education provides care and/or treatment for people with mental illness, even if the services are considered only incidental to the primary function of the school); *and see,* Senate Report 196, 106th Congress 1st session at page 26 (1999)(P&A authority is just as broad with respect to community settings so as to ensure people with disabilities are receiving the requisite care and services).

knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation.

The federal statutes and regulations establish a P&A's right to access records as part of its investigation. The P&A is entitled to access the records of a person with a disability who is served in a facility when the individual has a legal representative, the P&A has received a complaint or has probable cause to believe that such individual has been subject to abuse or neglect, and the P&A contacts the individual's legal representative upon receiving the name and address of such representative. 29 U.S.C.S. § 794e(f)(2); 42 U.S.C.S. § 10805(a)(4)(C); 42 U.S.C.S. § 15043(a)(2)(I)(iii). The provision regarding contact with a legal representative "upon receipt of the name and address of such representative" has been interpreted to permit the P&A to obtain the names and addresses of students for whom there is the requisite degree of probable cause to demand records. *See Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649 (D. Conn. 2005), *aff'd*, 464 F. 3d 299 (2nd Cir. 2006); *Disability Rights Wis., Inc. v. State Dep't of Pub. Instruction*, 463 F.3d 719 (7th Cir. Wis. 2006). Thus, Disability Rights North Carolina has the authority to obtain the names and addresses of students for whom there is the requisite degree of probable cause to demand records, in order to contact the legal representatives of such students.

Disability Rights North Carolina has received two complaints regarding the use of restraints in a self-contained classroom in Carroll Middle School. One complaint alleged the inappropriate use of physical restraints by classroom staff, resulting in physical injury to the student. The other complaint alleged the inappropriate use of mechanical restraints, specifically handcuffs; the use of these restraints in that classroom has been documented. Disability Rights North Carolina has received additional information that suggests the practice of employing handcuffs to restrain students may have gone beyond the documented incident.

We find that there is probable cause to believe that the reported incidents occurred. Our mandate established by the U.S. Congress and Governor Easley requires that we further investigate these reports of abuse. Therefore, we request that Wake County Public Schools provide the names and contact information for the students in the self-contained classroom, taught by Ms. Linda Lupien, at Carroll Middle School. As provided in the federal P&A statutes, we request that this information be provided to our office no later than 3 business days after the date of this letter. 42 U.S.C.S. 15043(a)(2)(J)(i).

Additionally, we request that Disability Rights North Carolina staff be granted access to the classroom in question and to Wake County Public Schools staff who may have knowledge of the incidents under review. We are very mindful of the need to minimize the impact of our investigation on the school environment and will work with you toward that end in every way possible. If the school district denies Disability Rights North Carolina access to its facility, staff

or students the law requires that the school district must promptly provide a written justification for its denial.[4]

Thank you in advance for your assistance and please do not hesitate to contact me if you have additional questions or concerns.

Sincerely,


Kristine L. Sullivan
Attorney


cc: Ann Majestic, School Board Attorney
    Dr. Del Burns, Superintendent

---

[4] 45 C.F.R. § 1386.22(i) If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities.