IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. _____

| | | |
|---|---|---|
| DISABILITY RIGHTS<br>  NORTH CAROLINA, | ) <br> ) <br> ) | |
|     Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | DECLARATION OF<br>KRISTINE L. SULLIVAN |
| WAKE COUNTY BOARD<br>  OF EDUCATION, and<br>ROBERT STUREY, in his<br>  individual capacity and in his official<br>  capacity as Senior Director of Special<br>  Education Services, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
|     Defendants. | ) <br> ) | |

## DECLARATION OF KRISTINE L. SULLIVAN

1. I am Kristine L. Sullivan. I am employed as a staff attorney at Disability Rights North Carolina ("DRNC"). I was admitted to practice law in the State of North Carolina on August 25, 2006. At DRNC, most of my cases involve issues concerning special education.

2. In April 2008, DRNC received a call from the parent of Student A, complaining that the School Resource Officer ("SRO") had placed her child in handcuffs. Through DRNC's normal intake procedures, I was assigned to assist Student A's parent.

3. I was informed by the parent of Student A that her child was placed in handcuffs by the SRO. Student A's parent told me that her child is a child with autism and, for the 2007-08 school year, was assigned to the self-contained classroom for children with autism at Carroll Middle School in the Wake County Public School System.

4. Student A's parent informed me that she had made multiple complaints to the classroom teacher and teaching assistants, to the school principal, and to staff in Wake County Special Education Services.

5. Over the course of the next three months, I reviewed documents provided to me by the parent of Student A. I spoke to staff at the Wake County Sheriff's Office, the organization that employs and provides School Resource Officers to the Wake County Public School System. I also spoke to individuals at the North Carolina Justice Academy who have knowledge about the SRO program, and to individuals at the North Carolina Department of Public Instruction.

6. In August 2008, DRNC received a call from the parent of Student B complaining that his child had come home from school with bruises resulting from the use of physical restraints. Through DRNC's normal intake procedures, I was assigned to assist Student B's parent.

7. I was informed by the parent of Student B that his child had come home from school with bruises on the upper arms and that the bruises were caused by physical restraint methods used by the classroom staff. I learned of the parent's additional concern that a vacant classroom had been used as a "WWF room," a location where the students were encouraged to wrestle with one another and with the teaching assistants in order to release aggression. Student B's parent told me that his child is a child with autism and, for the 2007-08 school year, was assigned to the self-contained classroom for children with autism at Carroll Middle School.

8. Student B's parent related to me that he had made multiple complaints to the classroom teacher, to the school principal, and to staff in Wake County Special

Education Services. The parent related that he had requested documentation regarding the restraints employed and the bruises on Student B. The parent stated that he did not receive an explanation as requested.

9. In the course of discussing Student B's matter generally with other attorneys at DRNC, I learned from another DRNC attorney that a parent had informally consulted with him about an education matter. The attorney believed that this third student, Student C, had also been assigned to the self-contained classroom for children with autism at Carroll Middle School for the same school year.

10. I spoke with the parent of Student C, who informed me that her child is a child with autism and was assigned to the self-contained classroom for children with autism at Carroll Middle School for the 2007-08 school year. The parent independently confirmed much of the information and complaints I had received from the parents of Student A and Student B concerning the use of physical restraint in the classroom, including the use of handcuffs.

11. I was informed by the parent of Student C that her child developed migraine headaches and panic attacks during the time the child was assigned to the classroom in question. I learned that the apparent cause of Student C's anxiety was the witnessing of the use of handcuffs and physical restraints on other students in the classroom, and Student C's fears that similar restraints would be used on that student.

12. The parent of Student C stated that she had made multiple complaints to the classroom teacher, to the school principal, and to staff in Wake County Special Education Services.

13. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct based on my own personal knowledge.

September 16, 2008
Date

_____
Kristine L. Sullivan
N.C. Bar No. 35595